**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  04-RB-0196 (MJW)

MARIO SIGALA, and
NIN JOHNSON, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

HARTFORD UNDERWRITERS INSURANCE COMPANY, a Connecticut corporation,
HARTFORD PROPERTY AND CASUALTY INSURANCE COMPANY, a Connecticut corporation, and
HARTFORD FINANCIAL SERVICES GROUP, INC., a Connecticut corporation,

      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

Before me is Defendants' motion for summary judgment [#18], filed September 30, 2004.  I grant the motion.

### I. JURISDICTION & STANDARD OF REVIEW

I have diversity jurisdiction over the plaintiffs' Complaint under 28 U.S.C. § 1332.  In resolving the defendants' motion for summary judgment, I have considered the pleadings, discovery, and affidavits on file, together with the arguments advanced and authorities cited by the parties in their respective briefs.  I have employed the analysis required by apposite law.  **See Anderson v. Liberty Lobby**, Inc., 477 U.S. 242, 250 (1986); **Celotex Corp. v. Catrett**, 477 U.S. 317, 325 (1986); **Matsushita**

*Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *Redmon v. United States*, 934 F.2d 1151,1155 (10th Cir. 1991); and *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994).

## II.  FACTS

In their Complaint, the plaintiffs claim that they are entitled to additional coverage under auto insurance policies issued by the defendants.  For convenience, I will refer to the defendants as "Hartford."  The plaintiffs claim that Hartford sold the auto insurance policies in question without offering optional additional personal injury protection benefits (APIP), as required by the Colorado Auto Accident Reparations Act, part 7 of article 4 of title 10, C.R.S. (Repealed by Laws 1997, H.B.97-1209, § 8, eff. July 1, 2003) (the No-Fault Act).  Plaintiff Johnson claims also that Hartford failed to provide and offer uninsured motorist (UM) coverage in compliance with the requirements of the No-Fault Act.  Each of the plaintiffs was injured in an auto accident involving a Hartford insured, and they each claim they are entitled to APIP benefits over and above the basic PIP benefits Hartford has provided to them.  In addition, Johnson claims she is entitled to additional UM coverage.

In May, 1992, Johnson applied for auto insurance with Hartford.  The application offered APIP coverage, but Johnson claims this offer did not comply with the No-Fault Act.  Johnson elected to purchase only basic PIP coverage.  Johnson was involved in an accident with an uninsured motorist on July 14, 1998.  Johnson's policy included uninsured motorist (UM) coverage of up to 25,000 dollars per person

and 50,000 dollars per accident.  After the accident, Johnson authorized her attorney to negotiate a settlement of her UM claim.  On August 27, 2001, Johnson signed a Release and Settlement of Claim concerning her UM claim.  *Motion for Summary Judgment*, Exhibit A-9.  She released Hartford from all claims relating to her claim for UM benefits in exchange for 25,000 dollars.  Johnson did not sign a release concerning her claim for APIP benefits.  Following the accident, Hartford paid Johnson 100,000 in medical benefits under the basic PIP provisions of her policy.  Johnson never has submitted a claim for wage loss benefits.  Additional facts concerning Johnson's PIP and APIP coverage will be discussed subsequently.

On March 7, 2002, Plaintiff Sigala, a pedestrian, was struck by a car driven by Millie Thompson.  Thompson was insured by Hartford.  Under §10-4-707(c), C.R.S., Sigala became a Hartford insured under Thompson's policy.  Based on the injuries he suffered in the accident, Sigala was paid medical and wage loss benefits under Thompson's policy.  On December 9, 2002, Sigala, Thompson, and Hartford entered into a general Release and Settlement Agreement concerning Thompson's liability for Sigala's injuries and Hartford's insurance coverage obligations.  *Motion for Summary Judgment*, Exhibit A-13.

### III.  RELEASE OF CLAIMS

Hartford argues that it is entitled to judgment on Johnson's claim concerning her UM coverage, and on all of Sigala's claims, because Johnson and Sigala each executed valid releases which released these claims against Hartford.  "A release is the relinquishment of a claim to the person or entity against whom the claim is

3

enforceable. The scope of a release is determined primarily by the intent of the parties as expressed in the release instrument, considered in light of the nature of the claim and the objective circumstances underlying the execution of the instrument." ***Cingoranelli v. St. Paul Fire and Marine Ins. Co.***, 658 P.2d 863, 865 (Colo. 1983) (superseded by statute on other grounds) (citations omitted).  This defense is an affirmative defense, and Hartford bears the burden of proof to demonstrate that Johnson and Sigala executed valid releases of these claims.

I find that the undisputed facts in the record demonstrate that Johnson released her claim for UM coverage against Hartford, and that Sigala released his claims for APIP coverage against Hartford.  Based on these releases, Hartford is entitled to summary judgment on the claims covered by Johnson and Sigala's releases.

### A. Johnson

On August 27, 2001, Johnson signed a Release and Settlement of Claim concerning her UM claim.  *Motion for Summary Judgment*, Exhibit A-9.  The content of the release and Johnson's voluntary and intentional execution of the release are not disputed.  Johnson inserted hand-written language on the release form limiting the scope of the release to her claim for UM coverage.  *Id*.  Aside from this language, however, the release contains the broad language of a global release.  The scope of the language of the release includes Johnson's claim for UM benefits in this case.

The release names the released entity as "The Hartford Insurance Company of the Midwest."  *Id.*  Johnson notes that none of the named defendants uses this name;

thus, she argues that the release is not valid as to the named defendants. Again, the "scope of a release is determined primarily by the intent of the parties as expressed in the release instrument, considered in light of the nature of the claim and the objective circumstances underlying the execution of the instrument." **Cingoranelli**, 658 P.2d at 865. Johnson testified under oath at her deposition that when she signed the release she understood that she was settling a claim with her insurance company, Hartford, and that she intended to settle that claim by signing the release. *Motion for Summary Judgment*, Exhibit A-2 (Johnson Depo), p. 87, ll. 15 - p. 88, ll. 6. Johnson's understanding and intent when she signed the release are not disputed. Given Johnson's understanding and intent, I conclude as a matter of law that Johnson's release includes the Hartford defendants named in this action.

Given these undisputed facts, I find that no rational trier of fact could find against Hartford on its affirmative defense that Johnson released her claim for additional UM benefits as to Hartford. I also find that Johnson's other arguments seeking to undermine the validity of the release are unavailing. Johnson has executed a valid release of her claim for UM benefits, and she is barred from asserting that claim against Hartford here. Hartford is entitled to summary judgment on Johnson's claim for additional UM benefits.

### B. Sigala

On December 9, 2002, Sigala, Thompson, and Hartford entered into a general Release and Settlement Agreement. *Motion for Summary Judgment*, Exhibit A-13. The release designates Sigala as the Releasor, Millie and Stanley Thompson as the

5

Releasees, and names Hartford as the Hartford Property and Casualty Insurance Company. Paragraph (2) of the release provides that the "RELEASE AND SETTLEMENT AGREEMENT shall apply to all claims, damages, or injures, whether, known, disclosed or manifested presently or in the future on the part of all parties to this AGREEMENT, to the effect that this AGREEMENT shall be a full, binding and complete settlement between the parties hereto . . . ." *Id*., ¶ 2. There is no dispute that Sigala executed this release, and there is no dispute or ambiguity concerning the written terms of the release.

Citing ***Cingoranelli***, Sigala argues that the release cannot be read to include Sigala's claim for PIP coverage because his claim for APIP coverage was not expressly included in the terms of the release. The releases in question in ***Cingoranelli*** were releases executed by Cingoranelli after she was injured in an auto accident. She released her claims against the tortfeasors who she claimed had caused the accident and her injuries. The insurance companies were not parties to the releases. When Cingoranelli sued the involved insurance companies for PIP benefits, the insurance companies argued that Cingoranelli's claims for PIP benefits were included in the releases under the common law joint tortfeasor rule. Under that rule, the release of one joint tortfeasor serves to release all other joint tortfeasors. ***Cingoranelli***, 658 P.2d at 866 - 66.

The Colorado Supreme Court concluded in ***Cingoranelli*** that the releases did not include Cingoranelli's claims for PIP benefits against the insurance companies. 658 P.2d at 869. The court found that Cingoranelli's claim for PIP benefits were

6

separate and distinct causes of action against the insurance companies. *Id*. Because the claims were separate and distinct, the court concluded that they were not included in the scope of the joint tortfeasor rule. *Id*. Here, Hartford was a party to Sigala's release, and Sigala released all claims against Hartford that were in any way related to the accident in which Sigala was injured. In this context, the release need not specify the particular claims Sigala was releasing. **Cingoranelli** does not stand for the proposition that claims for APIP benefits cannot be released unless that discreet claim is specifically mentioned in the release even when the insurance company is a party to the release.

Given these undisputed facts, I conclude that no rational trier of fact could find against Hartford on its affirmative defense that Sigala released his claims for APIP benefits, as asserted in the Complaint. Sigala is barred from asserting his claims for APIP benefits against Hartford, and Hartford is entitled to summary judgment on Sigala's claims.

### IV.  JOHNSON'S APIP CLAIMS

Based on Hartford's alleged failure to make a proper offer of APIP benefits, Johnson asserts six claims for relief in her Complaint: 1) a claim for a declaratory judgment that Johnson's Hartford policy is subject to reformation to include APIP benefits; 2) a claim for breach of insurance contract based on Hartford's failure to pay APIP benefits; 3) a claim for violation of §10-4-706(4)(a), C.R.S., which required insurers to provide a written explanation of PIP and APIP coverages to prospective insureds before issuing an auto insurance policy; 4) a claim for wilful and wanton

breach of contract; 5) a claim for breach of the covenant of good faith and fair dealing; and 6) a claim for civil conspiracy. Johnson's fifth and seventh causes of action have been dismissed, and are not included in this enumeration.

The particular APIP benefits that Colorado auto insurers were required to offer under the No-Fault Act were specified in §10-4-710, C.R.S., part of the No-Fault Act. Section §10-4-710, C.R.S. required that

> (2)(a) Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706 (basic PIP protection), at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical treatment] without dollar or time limitation; or
>
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical treatment] without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.
>
> (b) A complying policy may provide that all benefits set forth in section 10- 4-706(1)(b) to (1)(e) and in this section are subject to an aggregate limit of two hundred thousand dollars payable on account of injury to or death of any one person as a result of any one accident arising out of the use or operation of a motor vehicle.

Prior to 1992, the provisions of §10-4-710(2)(a), C.R.S., were somewhat different.

Johnson claims Hartford did not comply with the offer requirements of §10-4-710. Under Colorado law, the remedy for an insurance company's failure properly to offer APIP benefits is for the court to reform the subject policy to include the APIP benefits identified in §10-4-710(2)(a), C.R.S. In other words, when an insurer fails to

offer the insured APIP coverage that satisfies the No- Fault Act, "additional coverage in conformity with the offer mandated by statute will be incorporated into the policy . . . " **Brennan v. Farmers Alliance Mutual Insurance Co**., 961 P.2d 550, 554 (Colo. App. 1998). Johnson seeks a reformation of her Hartford policy based on Hartford's alleged failure properly to offer APIP benefits to her in conformity with the offer mandated by the No-Fault Act.

### A. Hartford's Offers of APIP Coverage to Johnson

Johnson first applied for an auto insurance policy with Hartford in May, 1992. *Motion for Summary Judgment*, Exhibits A-1, A-3. The content of this application is not disputed by the parties. Part six of the application describes the coverage options offered by Hartford, including APIP options. *Id*. Johnson did not select any of the APIP options outlined in the application.

Johnson argues that the APIP options included in this application did not comply with §10-4-710(2)(a)(II) because the application limited the additional PIP wage loss benefits to 52 weeks of wage loss rather than "unlimited in time" wage loss, as required by the statute. *Response to Motion for Summary Judgment*, p. 10. This contention is incorrect. Section 6ci of the application includes an option designated as "Option 3" which provides for a work loss benefit beginning "52 weeks after the date of the accident. This option eliminates the dollar and time limit for Work Loss and Essential Services subject to a Combined total limit of $200,000." This option, combined with basic PIP benefits and the expanded work loss option offered in Option 2 of section 6ci of the application, provide an expanded work loss benefit in

9

compliance with §10-4-710(2)(a)(II). The undisputed facts in the record demonstrate that Hartford's offer of an expanded work loss benefit in Johnson's application was in compliance with the requirements of Colorado law.

Hartford provided Johnson with additional information concerning optional APIP coverage in a notice sent to Johnson sometime between July 12, 1993, and July 11, 1994. *Motion for Summary Judgment*, Exhibit A-5. Johnson does not dispute that she received this notice, nor does she dispute the content of the notice. A comparison of the statutory requirements and the content of this notice demonstrates that this notice outlines the required APIP benefits as required by §10-4-710(2)(a), as amended, applicable to policies issued on and after July 1, 1992. The undisputed facts in the record do not support Johnson's argument that this notice does not properly outline the APIP coverage options required by statute after July 1, 1992.

Johnson argues that even if Hartford's offers of APIP coverage were in compliance with Colorado law, Hartford was not capable of offering its insurance applicants APIP benefits in compliance with §10-4-710 because the policy issued to Johnson and other Hartford insureds failed to include APIP benefits for non-family occupants and pedestrians. Colorado courts have determined that non-family occupants and pedestrians are entitled to coverage by APIP benefits when those benefits are available under a policy. The application form that Johnson filled out in May, 1992, said that PIP "covers you, relatives living with you, other people in your car and pedestrians." *Motion for Summary Judgment*, Exhibit A-3, ¶ 6bi. The application form does not include any language indicating that pedestrians and non-family

10

members are excluded from APIP coverage. Johnson notes, however, that her Hartford policy did not describe optional APIP coverage as including pedestrians and non-family member. Again, Johnson declined APIP coverage, but the form policy used by Hartford described APIP coverage because some Hartford insureds elected to purchase APIP coverage.

### B. Johnson's Reformation Claim

Johnson seeks reformation of her Hartford policy to include APIP benefits based on Hartford's alleged failure properly to offer APIP benefits to her in conformity with the offer mandated by the No- Fault Act. "Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties. The purpose of reformation is to give effect to the parties' actual intentions." **Carder, Inc. v. Cash**, 97 P.3d 174, 180 -181 (Colo. App.2003). Again, when an insurer fails to offer the insured APIP coverage that satisfies the No- Fault Act, the policy will be reformed to include "additional coverage in conformity with the offer mandated by statute will be incorporated into the policy . . . ." **Brennan**, 961 P.2d at 554.

In this case, the undisputed facts in the record demonstrate that Hartford's offer of APIP coverage to Johnson described the optional APIP coverage in a way that complied with the No-Fault Act. Johnson chose not to purchase this optional coverage. Under these circumstances, reformation of Johnson's policy to include APIP coverage would be contrary to the intent Johnson expressed after she was presented with a statutorily compliant offer of APIP coverage. Equity does not require

11

that Johnson's policy be reformed to provide her with optional coverage which she chose not to purchase after that optional coverage was described accurately to her.

Johnson's argument that reformation is required because the Hartford policy failed to include APIP benefits for non-family occupants and pedestrians is unavailing. Johnson reviewed and considered Hartford's accurate offers of APIP coverage, and declined to purchase that coverage. The fact that Hartford's policy did not accurately describe APIP coverage did not mislead Johnson about the options available to her, and did not cause her to make a coverage selection based on inaccurate information. The inaccuracy in the Hartford policy, as opposed to Hartford's accurate offers of APIP coverage, does not support a claim for reformation to conform the policy to the parties' intentions. Again, Johnson's expressed intention was to decline Hartford's accurate and compliant offer of APIP coverage.

In short, the undisputed facts in the record demonstrate that Hartford made offers of APIP coverage to Johnson in compliance with Colorado law. Johnson declined those offers of APIP coverage. The fact that the policies issued to Johnson contained inaccurate descriptions of the APIP coverage that Johnson had been offered, and which she declined, does not support her claim for reformation. Hartford is entitled the summary judgment on Johnson's reformation claim, her first claim for relief.

### C. Johnson's Other APIP Claims

Each of Johnson's five other claims for relief concerning APIP coverage is founded on her allegation that Hartford did not make a compliant offer of APIP

coverage to her, and that she, therefore, is entitled to reformation of her insurance contract. In light of my conclusion that Hartford provided Johnson with a compliant offer of APIP coverage, which Johnson rejected, I conclude that Hartford is entitled to judgment as a matter of law on all of Johnson's other claims related to APIP coverage. Again, I note that Johnson's fifth and seventh claims for relief were dismissed previously.

Johnson's Second Claim for Relief, for breach of contract, is based on her claim that her insurance contract with Hartford must be reformed to include APIP benefits, and that Hartford breached this reformed contract when it failed to pay Johnson APIP benefits. Johnson is not entitled to reformation because Hartford made a statutorily compliant offer of APIP coverage. Absent some basis for reformation of the contract, there is no basis to conclude that Hartford breached its contract with Johnson. Hartford is entitled to judgment as a matter of law on Johnson's breach of contract claim.

In her third claim for relief, Johnson asserts a claim for violation of §10-4-706(4)(a), C.R.S. This statute required Hartford to provide a written explanation of "all available insurance coverages" to an applicant before issuing a policy. As discussed above, the application Hartford supplied to Johnson in 1992 included a statutorily compliant offer of APIP coverages. The information in the application constituted a written explanation of "all available insurance coverages," as required by §10-4-706(4)(a), C.R.S. This compliant offer enabled Johnson to choose among the APIP coverages that Hartford was required to offer. Because Johnson was presented with

13

this compliant offer of APIP coverages, she is not entitled to reformation of her insurance contract to include APIP coverages she did not choose to purchase. Hartford is entitled to judgment as a matter of law on Johnson's third claim for relief.

Johnson's fourth claim for relief, for statutory willful and wanton breach of contract, also is based on Johnson's allegation that Hartford did not make a compliant offer of APIP coverage, and that Hartford therefore was obligated to reform her policy and provide her with APIP benefits. Johnson alleges that Hartford was aware of these facts, but ignored Johnson's rights and refused to provide her with APIP benefits. Hartford's compliant offer of APIP coverage to Johnson vitiates any basis for Johnson's claim that Hartford willfully disregarded an obligation to provide APIP benefits to Johnson. Hartford is entitled to summary judgment on Johnson's fourth claim for relief.

In her sixth claim for relief, Johnson alleges that Hartford breached the covenant of good faith and fair dealing because Hartford failed to notify her that she had the right to accept a proper offer of APIP coverage. Again, the undisputed facts in the record demonstrate that Hartford made a compliant offer of coverage, and that there is no basis to reform Johnson's policy. In this context, there is no evidence to support a claim that Hartford failed to notify Johnson that she had a right to APIP coverage under the policy in question. Hartford is entitled to judgment as a matter of law on Johnson's sixth claim for relief.

Finally, Johnson asserts a claim for civil conspiracy in her eighth claim for relief. She alleges that Hartford Financial Services Group, Inc., and its subsidiaries

agreed to use the insurance forms in question in this case, knowing that they did not comply with Colorado law in several particulars. This agreement, Johnson alleges, "was designed and intended to deprive eligible injured persons under Hartford policies of their statutory rights under the No-Fault Act and C.R.S. § 10-4-609." *Complaint,*, ¶ 105.

Under Colorado law, a claim of civil conspiracy has four elements[1]:

1) The defendant and at least one other person agreed, by words or conduct, to accomplish an unlawful goal or to accomplish a goal through unlawful means;

2) One or more unlawful acts were performed to accomplish the goal or one or more acts were performed to accomplish the unlawful goal;

3) The plaintiff had damages; and

4) The plaintiffs damages were caused by the acts performed to accomplish the goal.

Viewed in the light most favorable to Johnson, the undisputed facts in the record do not show that Johnson suffered damages caused by acts performed by Hartford in an effort to accomplish its allegedly unlawful goal. As discussed above, the undisputed facts in the record do not support reformation of Johnson's insurance contract to provide her with APIP benefits. Reformation is the only basis on which she seeks to prove that she is entitled to APIP benefits. Absent such an entitlement, Johnson cannot demonstrate that she has suffered damages caused by Hartford's efforts to accomplish its allegedly unlawful goal. Hartford is entitled to summary judgment on Johnson's eighth claim for relief.

---

[1] See **CJI-Civ. 4th 27:1** and the concomitant **Notes on Use** and **Source and Authority**.

15

## V.  OTHER PENDING MOTIONS

Also pending in this case are the plaintiffs' motion for class certification [#32], filed November 4, 2004, and motion for leave to amend class definition [#26], filed October 25, 2004.  The plaintiff has argued that I should consider the motion for class certification before resolving the defendants' motion for summary judgment.  I disagree.  It is important to determine if the named plaintiffs have viable claims before determining whether the named plaintiffs properly can act as representatives of a class of persons with similar claims.  In light of the dismissal of Sigala and Johnson's claims, the motion for class certification and the motion for leave to amend are moot.

The plaintiffs have moved also to strike Hartford's motion for summary judgment [#34], filed November 10, 2004, arguing that it is in violation of the scheduling order in this case, and that a ruling on the motion for class certification must come before a ruling on the motion for summary judgment.  I disagree with both contentions.  Nothing in the scheduling order precludes the defendants from filing a motion for summary judgment.  The plaintiffs have indicated that they have not been able to complete discovery concerning the merits of their claims.  I note, however, that the plaintiffs have not sought relief under FED. R. CIV. P. 56(f).  The plaintiffs' motion to strike Hartford's motion for summary judgment will be denied.

The plaintiffs have filed a motion for reconsideration [#55], filed May 3, 2005, of my order dismissing the plaintiffs' fifth and seventh claims for relief.  There is no independent right to file a motion to reconsider. I have reviewed the motion and

16

conclude that, in light of my findings and conclusions in this order, there is no basis to reconsider my ruling on the earlier motion to dismiss. The motion for reconsideration will be denied, and all other pending motions will be denied as moot.

## VI. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1) That defendants' motion for summary judgment [#18], filed September 30, 2004, is **GRANTED** as to the plaintiffs' first, second, third, fourth, sixth, and eighth claims for relief, as alleged in the plaintiffs' complaint;

2) That **JUDGMENT SHALL ENTER** in favor of the defendants and against the plaintiffs on the plaintiffs' first, second, third, fourth, sixth, and eighth claims for relief;

3) That the defendants are **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

4) That the plaintiffs' motion to strike [#34], filed November 10, 2004, is **DENIED**;

5) That the plaintiffs' motion for reconsideration [#55], filed May 3, 2005, is **DENIED**;

6) That all other pending motions are **DENIED** as moot;

7) That the trial preparation conference set for November 4, 2005, and the trial set for November 7, 2005, are **VACATED**; and

8) That the Complaint and this case are **DISMISSED** *en toto*.

Dated August 29, 2005, at Denver, Colorado.

                                            BY THE COURT:

                                            s/ Robert E. Blackburn
                                            Robert E. Blackburn
                                            United States District Judge