**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 04-cv-00196-REB-MJW

MARIO SIGALA, and
NINA JOHNSON, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

HARTFORD UNDERWRITERS INSURANCE COMPANY, a Connecticut corporation,
HARTFORD PROPERTY AND CASUALTY INSURANCE COMPANY, a Connecticut corporation, and
HARTFORD FINANCIAL SERVICES GROUP, INC., a Connecticut corporation,

    Defendants.

**ORDER DENYING PLAINTIFF JOHNSON'S MOTION TO ALTER OR AMEND**

**Blackburn, J.**

The matter before me is **Plaintiffs' Motion to Alter or Amend Judgment Under F.R.C.P. 59(e)** [#69], filed September 13, 2005. The defendants have filed a response, and the plaintiff has filed a reply. I deny the motion.

### I. STANDARD OF REVIEW

FED. R. CIV. P. Rule 59(e) permits a court to correct errors of fact or law appearing on the record. To establish the grounds to alter or amend a judgment under this rule, the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." ***FDIC v. Meyer***, 781 F.2d 1260, 1268 (7th Cir. 1968).

## II.  BACKGROUND

Plaintiff, Nina Johnson, asks that I reconsider Part IV of my August 29, 2005, order [#67] granting the defendants' motion for summary judgment.  This case concerns the requirements of the Colorado Auto Accident Reparations Act, part 7 of article 4 of title 10, C.R.S. (Repealed by Laws 1997, H.B.97-1209, § 8, eff. July 1, 2003) (the No-Fault Act).  Johnson claims defendant Hartford sold the auto insurance policy in question without offering optional additional personal injury protection benefits (APIP), as required by the No-Fault Act, §10-4-710, C.R.S.  The requirements of the Act are detailed in my August 29, 2005, order.  In that order, I concluded that Johnson had not demonstrated that Hartford had violated the requirements of the Act, and I granted summary judgment in favor of Hartford on Johnson's claims.

In her motion to alter or amend Johnson argues that I "misstated the specific requirements of Colorado's No Fault Act, as (I) applied the facts shown on Defendants' 'offer' materials."  *Motion*, pp. 2 - 3.  On further review, I find that I did misstate the application of the No Fault Act to one aspect of Johnson's case.  However, I conclude that this misstatement does not require that the entry of summary judgment in favor of Hartford be withdrawn.  Rather, other undisputed facts in the record, facts that were mentioned in summary fashion in my August 29, 2005, order, support the entry of summary judgment in favor of Hartford.

The defendants note that some of the arguments raised in Johnson's motion to alter or amend were not raised previously by Johnson.  These arguments, Hartford asserts, should not be considered on a motion to alter or amend judgment.  Some of the issues raised in the motion to alter or amend were not raised by Johnson previously.  However, in view of my conclusion that I misstated, in one respect, the

requirements of the No-Fault Act in my August 29, 2005, order, I will consider Johnson's other arguments on the merits.

### III.  ANALYSIS

In my order granting Hartford's motion for summary judgment I concluded that

> Section 6ci of (Johnson's) application includes an option designated as "Option 3" which provides for a work loss benefit beginning "52 weeks after the date of the accident.  This option eliminates the dollar and time limit for Work Loss and Essential Services subject to a Combined total limit of $200,000."  This option, combined with basic PIP benefits and the expanded work loss option offered in Option 2 of section 6ci of the application, provide an expanded  work loss benefit in compliance with §10-4-710(2)(a)(II).

*Order* [#67], p. 9.  Johnson argues that this conclusion is not correct because the No-Fault Act did not require insureds to purchase extended essential services benefits in order to obtain extended wage loss coverage unlimited in time.  On further review, I conclude that Johnson is correct.  The APIP offer quoted above included a requirement that an insured purchase extended essential services benefits in order to obtain extended wage loss coverage unlimited in time.  With this requirement, Hartford's offer of APIP coverage did not comply with the requirements of the No-Fault Act, §10-4-710, C.R.S.

That non-compliance, however, does not change the result in this case.  I also concluded in my order that Hartford provided Johnson with additional information concerning optional APIP coverage in a notice sent to Johnson sometime between July 12, 1993, and July 11, 1994.  *Order* [#67], p. 10.  The content of this notice and Johnson's receipt of this notice are not disputed.  The notice outlined the available APIP coverage and gave Johnson an opportunity to select various APIP options. *Defendant's Motion for Summary Judgment* [#18], filed September 30, 2004, Exhibit A-

3

5, attachment 1 (PIP Coverage Disclosure Form). On the page designated as H0002717, APIP coverage options are outlined. The available options include: Option 1 - coverage of medical expenses without dollar or time limitation, "subject to a combined total limit of $200,000 per person"; and Option 2 - the same medial expense coverage as in Option 1 plus various work loss coverages, including coverages that must be offered under the No-Fault Act, "subject to a combined total limit of $200,000 per person." *Id*. The work loss option contained no time limitation.

The summary of available APIP coverages sent to Johnson between July 12, 1993, and July 11, 1994, cured any flaw in the initial offer. The notice accurately outlines the coverages required to be offered under the No Fault Act, §10-4-710, C.R.S. Specifically, it offers 1) compensation for medical expenses without dollar or time limitations; or 2) compensation for medical expenses and payment of benefits equivalent to eighty-five percent of the loss of gross income per week without dollar or time limitations. The PIP Coverage Disclosure Form was delivered to Johnson long before the accident that caused her to seek coverage under her policy.

Although I did not discuss the issue in my August 29, 2005, order, such a notice is effective to cure any flaws in an initial offer of APIP coverage. The No-Fault Act requires that a sufficient offer of APIP coverage be made "prior to issuing any policy to an insured." §10-4-706(4)(a), C.R.S. If that requirement is not satisfied before a policy is issued, the Act does not define what an insurer must do to make a sufficient offer of APIP coverage after the relevant insurance policy is in effect. The Colorado Supreme Court addressed a similar issue in **Allstate Insurance Co. v. Parfrey**, 830 P.2d 905 (Colo.1992). **Parfrey** involved an insurance company's required offer of optional uninsured/underinsured motorist (UM/UIM) coverage under the No-Fault Act. The court

4

construed §10-4-609(2), C.R.S., as creating "a one-time duty upon an insurer to notify an insured of the nature and purpose of UM/UIM coverage and to offer the insured the opportunity to purchase such coverage" in amounts provided for in the No-Fault Act. *Id*. at 912. The court addressed also the circumstance in which the insurer fails to make a proper offer of UM/UIM coverage before the policy is issued. "If the insurer fails to discharge its duty prior to the issuance of the policy, the duty continues and can be discharged only by an adequate notification and offer on some future occasion." *Id*.

Although **Parfrey** involved UM/UIM coverage, rather than APIP coverage, its holding is instructive in this case. **Parfrey** involved a statutory requirement that an insurer offer certain optional coverages before issuing a policy, and addressed the requirements for curing a failure to make such an offer before a policy was issued. This case presents a similar issue. In **Parfrey**, the court held that "an insurer's duty of notification and offer must be performed in a manner reasonably calculated to permit the potential purchaser to make an informed decision on whether to purchase UM/UIM coverage higher than the minimum statutory liability limits . . . ." *Id*. at 913. The court suggested several factors to be considered in determining whether this duty has been satisfied. The factors suggested by the **Parfrey** court are

> the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

*Id*. The **Parfrey** court did not provide an exhaustive list of relevant factors, and none of the discrete factors listed in **Parfrey** is dispositive. Rather, "the dispositive consideration is whether, under the totality of circumstances, the insurer's notification

5

and offer to the insured adequately informed the insured that UM/UIM coverage was available" in the amounts required to be offered under the Act. *Id*. at 914 n. 5.

Having reviewed the *Parfrey* factors and the evidence in the record of this case, I conclude that, under the totality of circumstances, Hartford's notification and offer to Johnson, as stated in the PIP Coverage Disclosure Form, was adequate. The PIP Coverage Disclosure Form provided 1) reasonable notice of the topic and purpose of the form; 2) a clear written explanation of the purpose of APIP coverage, coverage for medical expenses and work loss; 3) a clear written explanation of the APIP coverage options available to Johnson; and 4) a readily understandable means of selecting such optional coverage if she wished to do so. The offer was made in a separate document that was labeled clearly, and was mailed to Johnson with important policy documents. Considering the totality of the circumstances, this offer satisfied the "written explanation" requirement of §10-4-706(4)(a), C.R.S., and the *Parfrey* standard for making a statutorily required offer after a policy has been issued.

Johnson argues also that I should reconsider my August 29, 2005, order because there are other flaws in Hartford's documents that outline the available PIP and APIP coverages. I conclude that these arguments are unavailing. First, Johnson argues that Hartford's description of the required basic PIP coverages was inaccurate. Even if this is true, Johnson did not allege an inaccurate description of basic PIP coverage as a basis for any of the claims she asserted in her complaint. Further, Johnson does not claim that Hartford has failed to provide her with the required basic PIP coverages. This issue does not provide a basis to reconsider my order granting summary judgment in favor of Hartford.

Second, Johnson notes that the No Fault Act permits an aggregate limit on APIP coverages of 200,000 dollars per person per accident.  The Hartford forms, however, describe the APIP medical and work loss coverages as being subject to a combined total limit of 200,000 dollars per person, and does not specify that the limitation is per person per accident.  *PIP Coverage Disclosure Form*, p. H0002717.  The fact that Hartford's summary of APIP medical and work loss coverages does not use the phrase "per person per accident" does not make Hartford's offer of APIP coverage inadequate.  By statute, APIP coverage provides certain levels of coverage for "any one person as a result of any one accident."  §10-4-710(2)(b), C.R.S.  Hartford's description of PIP and APIP coverage describes such coverage as covering various expenses incurred as a result of "an auto accident" or "an accident."  *Id.*, pp. H0006840, H0002717.  While the description of the 200,000 dollar cap might be more detailed, Hartford's failure to use the phrase "per accident" when describing the cap on APIP medical and work loss coverage does not mean that its description of this coverage violates the requirements of §10-4-710(2)(b), C.R.S.

Third, Johnson argues that Hartford's description of the required APIP work loss benefit does not indicate that this benefit is unlimited in time.  The description of this benefit in the PIP Coverage Disclosure Form does not specify that this coverage is unlimited in time.  However, the description also does not include any time limit on such coverage.  Again, the description of the APIP work loss coverage might be more detailed, but Hartford's failure to use the phrase "unlimited in time" when describing the work loss coverage does not mean that its description of this coverage violates the requirements of §10-4-710(2)(b), C.R.S.

## IV.  CONCLUSION & ORDER

Having reviewed the arguments asserted by Johnson in her motion to alter or amend judgment, I conclude that there is no reason to alter my conclusion that Hartford is entitled to summary judgment on all of Johnson's claims.  After review of Johnson's motion to alter or amend, I conclude that my factual and legal rationale for the entry of summary judgment should be modified as outlined in this order.

**THEREFORE, IT IS ORDERED** that the **Plaintiffs' Motion to Alter or Amend Judgment Under F.R.C.P. 59(e)** [#69], filed September 13, 2005, is **DENIED**.

Dated June 16, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**